IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-00234-01-CR-W-BCW |
| | ) | |
| DEJUAN A. CUTCHLOW, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Dejuan A. Cutchlow's Motion to Suppress Evidence and Statement (Doc. #21). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On July 5, 2019, a Criminal Complaint was filed against defendant Dejuan A. Cutchlow. On July 16, 2019, the Grand Jury returned a three-count Indictment charging defendant Cutchlow with possession of heroin with intent to distribute (Count One), with possession of a firearm in furtherance of a drug trafficking crime (Count Two), and with being a felon in possession of a firearm (Count Three).

An evidentiary hearing on the motion to suppress was held on February 7, 2020. Defendant Cutchlow was represented by retained counsel S. Chase Higinbotham, Jr. The Government was represented by Assistant United States Attorney Mary Kate Butterfield. The Government called Detective Phillip Wayne Stewart, Jr. of the Lee's Summit Police Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On June 28, 2019, Detective Stewart drafted and applied for a search warrant through the Circuit Court of Jackson County, Missouri, authorizing the search of the residence located at 421 Southwest Highland Street, Lee's Summit, Missouri. (Tr. at 4.) The Application for Search Warrant provided in part:

   > In March 2018[1] an investigation was conducted into the death of Taylor STEPHENS who initially was thought to have died from result of a Heroin overdose. It was later ruled a drowning after her use of Heroin. During this investigation several confidential sources (CS) were interviewed and it was learned that STEPHENS regularly obtained her Heroin from Jared DANIELS. It was also learned that DANIELS has more than one source of Heroin. One was identified De-Juan CUTCHLOW, also known as "Orca". One of the CS's stated he had recently stopped using Heroin and had also used DANIELS as a source. The CS had been with DANIELS to CUTCHLOW's residence to purchase Heroin. The CS supplied the address [of] 521[2] SW Highland St, Lee's Summit Missouri.
   >
   > On 6-13-2019 DET Mitch KELLEY and I spoke to another CS. This CS stated he recently stopped using Heroin and wanted to supply information of those in the Lee's Summit area distributing drugs. One of those the CS spoke of was someone he knew as "Orca" and described "Orca's" house as the one being located at 421 SW Highland St, Lee's Summit Missouri. The CS stated he knows "Orca" to be capable of selling "ounces" of Heroin a day. The CS went on to say that he also knew "Orca" to regularly front and/or sell DANIELS ¼ to a ½ an ounce of Heroin to sell.
   >
   > On 6-18-2019 DET KELLEY and I conducted physical surveillance of 421 SW Highland, Lee's Summit Missouri. We observed this residence to have a far higher number of short stay

---

[1] Detective Stewart testified that the investigation was conducted in March 2019. (Tr. at 13.) The reference to March 2018 was inaccurate. (Tr. at 13.)

[2] Detective Stewart testified that the reference to "521 SW Highland" was inaccurate. (Tr. at 11.) The confidential source supplied the address of "421 SW Highland." (Tr. at 11-12.) Detective Stewart testified that he made a typo. (Tr. at 12, 29.)

visitor's as compared to other residences in the neighborhood. Through training and job experience I know this to be a common occurrence at a residence that is being used to distribute illegal drugs.

On 6-27-2019 DET KELLEY and I recovered two bags of trash from 421 SW Highland St, Lee's Summit Missouri. The bags were removed from the trash can that had been placed at the curbing for pick up. WE next examined the contents of the bags. Found was mail addressed to De-Juan CUTCHLOW at 421 SW Highland St, Lee's Summit Missouri. Also in the trash was an abundance of clear baggies with the corners cut away. I know that baggies are a common product used to package illegal drugs for sell. Those that package the drug will place the substance into the corner of the baggie, tie it off then cut away the remaining portion leaving the baggie with the corners missing as waste. One of the baggies with a corner still intact had a dark sticky residue in it. DET KELLEY and I, Utilizing the Thermo Scientific "TruNarc" Raman Spectroscopy Analyzer (SN TN5139), the "TruNarc" Analyzer produced a positive test for Heroin of the residue in the baggie. Also found in the trash was large heavy duty bag that appeared to have once been heat sealed. The baggie had what appeared to be a small amount of Marijuana remnants and appeared to be capable of hold 1 to 2 pounds of Marijuana depending on the consistencies of the Marijuana.

A check of CUTCHLOW's criminal history showed two previous drug related arrest along with 4 active warrant for his arrest.

I have also found that many of those engaged in the sales of illegal drugs have more than one type of controlled substance in their possession. During many of these drug investigations, it has been shown that these individuals have large amounts of cash money with no real explanation of how they come about their money and are a direct result of drug sales. I am aware that drug dealing is a cash business. Further, many of these individuals keep records of their dealings with their clients in either written form or in digital files located on a computer or mobile device.

(Gov. Exh. 1 at 1-2.)

2. Detective Stewart swore to the contents of the application by phone. (Tr. at 4, 25-26.) Judge Jeffrey C. Keal, a judge in the Circuit Court of Jackson County, Missouri, signed the Search Warrant. (Tr. at 4; Gov. Exh. 1 at 4.) The Search

3

Warrant authorized the seizure of the following:

1. Any and all Heroin, a Schedule I Controlled Substance.
2. Any and all Marijuana and/or Marijuana wax, a Schedule I Controlled Substance
3. Any and all drug paraphernalia.
4. Any and/or all controlled substances.
5. Any and/or all papers and/or records in written or digital format associated with the use/sale/distribution/manufacture of controlled substances to include any or all electronic/digital devices that such records can be stored in.
6. Any and/or all United States currency determined to have been used in the sale/distribution/manufacture of controlled substances or in close proximity thereof.
7. Any and/or all papers tending to show occupancy at and/or control over the premises searched, including but not limited to utility bills, correspondence, and lease agreements.

(Gov. Exh. 1 at 4.) After Detective Stewart obtained authorization from Judge Keal to search the residence located at 421 Southwest Highland Street, Lee's Summit, Missouri, Detective Stewart and other members of his team made plans to execute the warrant. (Tr. at 4.)

3. The Search Warrant for the residence located at 421 Southwest Highland was executed on July 3, 2019. (Tr. at 5.) Detective Stewart testified that during the execution of the Search Warrant, he observed in plain view, in the bedroom that was identified as belonging to Dejuan Cutchlow, a large amount of U.S. currency, suspected heroin, suspected marijuana, and a firearm. (Tr. at 5.) The firearm was observed on a nightstand next to the bed. (Tr. at 5.) After observing the firearm, Detective Stewart left the residence to obtain a secondary or piggy-back search warrant to seize the firearm because the original search warrant did not cover the seizure of firearms. (Tr. at 6.)

4. Detective Stewart drafted and submitted an Application for Search Warrant for a piggy-back warrant on July 3, 2019. (Tr. at 6.) The Application for Search Warrant for the piggy-back warrant contained most of the information set out in the application for the original search warrant as well as the following additional information:

> On 6-28-2019 a search warrant was obtained for 421 SW Highland St, Lee's Summit Missouri and signed by Judge Jeffery KEAL. This search was served on 7-3-2019. During the course of the search warrant execution, a large amount of Heroin and US currency was discovered. Also located was a black framed Taurus

4

brand handgun. This was located in a bedroom determined to be CUTCHLOW's. Also in the bedroom was US currency along with suspected Heroin and Marijuana. At the time of this writing the search of the residence is ongoing.

I have also found that many of those engaged in the sales of illegal drugs have more than one type of controlled substance in their possession. During many of these drug investigations, it has been shown that these individuals have large amounts of cash money with no real explanation of how they come about their money and are a direct result of drug sales. I am aware that drug dealing is a cash business. Further, many of these individuals keep and maintain firearms for the purpose of protecting their drugs and money.

I am requesting a piggy back search warrant to retrieve the firearm and any other firearms or ammunition in the residence.

(Gov. Exh. 2 at 1-2.)

5. Detective Stewart swore to the contents of the application by phone. (Tr. at 6, 26.) Judge Twila K. Rigby, a judge in the Circuit Court of Jackson County, Missouri, signed the piggy-back Search Warrant. (Tr. at 6; Gov. Exh. 2 at 3.) The piggy-back Search Warrant authorized the seizure of the following:

   1. Any and all firearms.
   2. Any and all ammunition

(Gov. Exh. 2 at 3.) After obtaining the piggy-back warrant, Detective Stewart notified Detective Kelley that the warrant had been authorized. (Tr. at 6-7.) The Officer's Return shows that Detective Kelley recovered the firearm and ammunition. (Gov. Exh. 1.)

6. The Officer's Return for the original search warrant provides the following general description of the property seized as "Narcotics, handgun, electronic devices, currency, drug paraphernalia, paperwork." (Gov. Exh. 1.) The Officer's Return then provides the following list of property seized:

- Large Ziploc bag of suspected marijuana from green plastic storage container
- Plastic baggie with suspect narcotics/powder (tan color) from steel truck tool box
- Plastic bag of suspected marijuana from steel truck tool box
- Bag of various bong pipes/glassware from steel truck tool box

5

- Bag of suspected marijuana from steel truck tool box
- Smaller digital scale
- Large blue/purple Ziploc baggie of suspected marijuana
- Small baggie of suspected methamphetamine
- Large stack of US currency ($3730) from top of dresser
- Small stack of US currency ($90) from safe
- Ziploc of suspected heroin from freezer
- Walmart bag with suspected heroin from freezer
- Bag of various drug paraphernalia from dresser
- Baggie of suspected heroin from dresser
- Large Ziploc bag of suspected marijuana from dresser
- Reloadr digital scale (in case)
- Baggie of brown tar-like substance from closet
- Digital scale (Tanita) from bar area
- US mail package/box from trash can
- Money orders and shipping receipts from trash can
- Black cell phone (Blade) on bed
- Silver cell phone (Galaxy S8) on bed
- Glass bowl pipe and yellow baggies nightstand
- Taurus 9mm G2S S/N#TLT65811 with magazine containing 8 total rounds from top of nightstand
- Two Hamilton Beach blenders (bar area)
- Plastic bottle of lactose powder (bar area)
- Digital scale (Ghostface Killa) from bar area

(Gov. Exh. 1.)

7. The Officer's Return for the piggy-back search warrant states that a Taurus G2S 9mm firearm, a magazine, and eight rounds of 9mm ammunition were seized. (Gov. Ex. 2.)

8. The firearm that Detective Stewart observed on defendant Cutchlow's nightstand (a Taurus 9mm with magazine containing eight rounds) was included in the Officer's Return for both the original search warrant and the piggy-back warrant. (Tr. at 9; Gov. Exhs. 1 and 2.) Detective Stewart testified that the firearm was included on both returns because the return on the original warrant was used as a receipt for property owners as to what was seized from the residence. (Tr. at 9.) The officers on the scene had a laptop and a printer and printed off the return there at the scene. (Tr. at 10.) Since Detective Stewart was at the station with the piggy-back warrant, he filled out the return for the piggy-back warrant and delivered it to defendant Cutchlow's jail property. (Tr. at 9.)

6

## III. DISCUSSION

Defendant Cutchlow seeks to suppress "all evidence, and testimony related to such evidence, obtained as a result of the search and seizure of Mr. Cutchlow, his person and his residence on July 3, 2019." (Motion to Suppress Evidence and Statement (Doc. #21) at 1.) In support of the motion, defendant Cutchlow provides the following argument:

> In the instant case, the law enforcement officer did not present facts in the first search warrant application sufficient for the state court judge to believe there was probable cause to search Mr. Cutchlow's residence. In the execution of the first search warrant, law enforcement officers exceeded the scope of search of the residence authorized in the first search warrant and seized money order receipts, receipts (2), mail which did not identify the resident(s) of the residence being searched, a Taurus 9mm handgun, magazine and 8 rounds of ammunition. Thereafter, by seeking and obtaining the "piggy back" search warrant (#2), the officers did not cure the illegal search and seizure which had already been executed.[3]

(Doc. #21 at 5.)

### A. Probable Cause

The Eighth Circuit Court of Appeals has set forth the following with respect to probable cause in a search warrant:

> "Probable cause to issue a search warrant exists when an affidavit . . . in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination of

---

[3]The motion also asserts that statements made by defendant Cutchlow should be suppressed as these statements were made after an illegal arrest. (Doc. #21 at 5.) The motion does not set forth any argument or facts to support an argument that Cutchlow's arrest was not proper. The Application for Search Warrant provided in support of the original Search Warrant stated, "A check of CUTCHLOW's criminal history showed two previous drug related arrest along with 4 active warrant[s] for his arrest." (Fact No. 1.) Given these outstanding arrest warrants, as well as the contraband or evidence of criminal activity seized from defendant Cutchlow's residence, the Court finds that it was appropriate for the officers to arrest Cutchlow. Thus, any argument to suppress which is based on the Court finding that defendant Cutchlow's arrest was illegal must fail.

7

probable cause is made after considering the totality of the circumstances. *United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007). After a judge has issued a search warrant upon a finding of probable cause, "that finding deserves great deference." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)(citing *Gates*, 462 U.S. at 236). Thus, when reviewing the sufficiency of the . . . affidavit supporting a search warrant that was found by the issuing judge to provide probable cause, we give great deference to the issuing judge's finding. *Id.*

*United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). It should be noted that corroboration of details of an informant's tip by independent police work is of significant value under the "totality-of-the-circumstances" analysis. *See Illinois v. Gates*, 462 U.S. 213, 241-45 (1983). Also, "probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." *See United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002)(quoting *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999)).

On June 28, 2019, Judge Keal, a Jackson County Circuit Court judge, was presented with the following facts: (1) during an investigation in which several unidentified confidential sources were interviewed, it was learned that Dejuan Cutchlow, also known as Orca, was a source for heroin; (2) one unidentified confidential source ("CS-1") identified Cutchlow as his source for heroin; (3) CS-1 stated that he had been to Cutchlow's residence to purchase heroin; (4) CS-1 supplied the address of 521[4] Southwest Highland Street, Lee's Summit, Missouri; (5) on June 13, 2019, a second unidentified confidential source ("CS-2") advised that someone he knew as Orca was selling heroin; (6) CS-2 advised that Orca's house was located at 421 Southwest Highland Street, Lee's Summit, Missouri; (7) on June 18, 2019, while surveilling 421 Southwest Highland Street, Lee's Summit, Missouri, officers observed the residence to have a high number of short stay visitors (Detective Stewart stated in the Application that based on his

---

[4]While Detective Stewart testified that 521 was a typo, 521 was the number first provided in the Application for Search Warrant. (Fact No. 1.)

training and experience, this type of activity was a common occurrence at a residence that is being used to distribute illegal drugs); (8) on June 27, 2019, a trash pull from 421 Southwest Highland Street, Lee's Summit, Missouri, revealed mail addressed to Cutchlow, an abundance of clear baggies with the corners cut away (Detective Stewart stated in the Application that those who package drugs will place the substance into the corner of a baggie, tie it off, then cut away the remaining portion leaving as waste the baggie with the corner missing), a baggie with the corner still intact which had a dark sticky residue in it which tested positive for heroin, and a large heavy duty bag that appeared to have once been heat sealed and which appeared to contain marijuana remnants; and (9) a check of Cutchlow's criminal history showed two previous drug related arrests and four active warrants for his arrest. (Fact No. 1.) Further, Detective Stewart stated in the Application that, based on his experience relating to narcotics investigations, drug traffickers commonly have more than one type of controlled substance in their possession, keep large amounts of cash, and keep records of their dealings with their clients in either written form or in digital files located on a computer or mobile device. (Fact No. 1.)

Given the information presented to Judge Keal in the original Application for Search Warrant, which included independent police work that corroborated informants' tips as well as observations made by the officer which were based on his training and experience, this Court finds that the judge had a substantial basis for concluding that there was probable cause to believe that contraband or evidence of a crime, that is drug trafficking, would be found at 421 Southwest Highland Street, Lee's Summit, Missouri. The original Search Warrant properly authorized the seizure of heroin, marijuana, and other controlled substances, drug paraphernalia, records associated with the use, sale, distribution, or manufacture of controlled substances

including the devices in which such records could be stored, United States currency, and papers tending to show occupancy or control over the premises searched.

While executing the original search warrant, Detective Stewart observed a firearm in plain view in defendant Cutchlow's bedroom. (Fact No. 3.) Rather than seize the firearm under the plain view doctrine,[5] Detective Stewart left the residence to obtain a piggy-back search warrant for the firearm. (Fact No. 3.)

On July 3, 2019, Judge Rigby, a Jackson County Circuit Court judge, was presented with the following facts: (1) on June 13, 2019, an unidentified confidential source ("CS") advised that someone he knew as Orca was selling heroin; (2) the CS advised that Orca's house was located at 421 Southwest Highland Street, Lee's Summit, Missouri; (3) on June 18, 2019, while surveilling 421 Southwest Highland Street, Lee's Summit, Missouri, officers observed the residence to have a high number of short stay visitors (Detective Stewart stated in the Application that based on his training and experience, this type of activity was a common occurrence at a residence that is being used to distribute illegal drugs); (4) on June 27, 2019, a trash pull from 421 Southwest Highland Street, Lee's Summit, Missouri, revealed mail addressed to Dejuan Cutchlow, an abundance of clear baggies with the corners cut away (Detective Stewart stated in the Application that those who package drugs will place the substance into the corner of

---

[5] It is settled law that an officer "may seize, without a warrant, an item that is 1) in plain view, 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent." *United States v. Banks*, 514 F.3d 769, 773 (8th Cir.), *cert. denied*, 553 U.S. 1100 (2008). *See also Payton v. New York*, 445 U.S. 573, 587 (1980)("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.") When Detective Stewart observed the firearm in plain view, he was lawfully in defendant Cutchlow's bedroom executing a search warrant. The incriminating character of the firearm was immediately apparent to Detective Stewart. Arguably, Detective Stewart could have lawfully seized the firearm without a warrant.

a baggie, tie it off, then cut away the remaining portion leaving as waste the baggie with the corner missing), a baggie with the corner still intact which had a dark sticky residue in it which tested positive for heroin, and a large heavy duty bag that appeared to have once been heat sealed and which appeared to contain marijuana remnants; (5) on June 28, 2019, a search warrant signed by Judge Keal was obtained for 421 Southwest Highland Street, Lee's Summit, Missouri; (6) on July 3, 2019, during the execution of said search warrant, a large amount of heroin and cash were discovered; and (7) during the execution of said search warrant, officers also located a handgun along with cash and suspected heroin and marijuana in Cutchlow's bedroom. (Fact No. 4.) Further, Detective Stewart stated in the Application that, based on his experience relating to narcotics investigations, drug traffickers commonly have more than one type of controlled substance in their possession, keep large amounts of cash money, and keep firearms for the purpose of protecting their drugs and money. (Fact No. 4.)

Given the information presented to Judge Rigby in the second Application for Search Warrant, which included independent police work that corroborated the informant's tip as well as observations made by the officer which were based on his training and experience, this Court finds that the judge had a substantial basis for concluding that there was probable cause to believe that contraband or evidence of a crime, that is drug trafficking, would be found at 421 Southwest Highland Street, Lee's Summit, Missouri. The piggy-back Search Warrant properly authorized the seizure of firearms and ammunition.

However, even if probable cause did not exist for the warrants at issue (which this Court does not believe to be the case), the *Leon* good faith exception would support the admissibility of the evidence seized pursuant to the warrants since it appears that the officers executing the

11

warrants were acting in "objectively reasonable reliance" on warrants issued by neutral judges. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Murphy*, 69 F.3d 237, 241 (8th Cir. 1995), *cert. denied*, 516 U.S. 1153 (1996). Under this exception, "absent allegations that the [judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998)(quoting *Leon*, 468 U.S. at 926)). Defendant Cutchlow has not alleged any basis for concluding that the *Leon* good faith exception to the exclusionary rule does not apply in this case.

> B. <u>Execution of the Search Warrants</u>

Defendant Cutchlow also argues that "[i]n the execution of the first search warrant, law enforcement officers exceeded the scope of search of the residence authorized in the first search warrant and seized money order receipts, receipts (2), mail which did not identify the resident(s) of the residence being searched, a Taurus 9mm handgun, magazine and 8 rounds of ammunition." (Motion to Suppress Evidence and Statement (Doc. #21) at 5.)

As set forth above, the Taurus 9mm handgun, magazine, and ammunition were not seized pursuant to the original search warrant. Rather, Detective Stewart left the residence to obtain a piggy-back search warrant for these items. (Fact No. 3.) The Court finds Detective Stewart's explanation credible that these items were included on the Officer's Return for the original Search Warrant not because they were seized pursuant to that warrant, but so that a receipt containing all items seized would be left at the residence. (Fact No. 8.) With respect to the seizure of "money order receipts, receipts (2), [and] mail which did not identify the resident(s) of

the residence being searched," the Court assumes these are the items listed in the Officer's Return as "US mail package/box from trash can" and "Money orders and shipping receipts from trash can." (Fact No. 6.) It appears that these items fall within the following categories of items to be searched for and seized pursuant to the original Search Warrant:

> 5. Any and/or all papers and/or records in written or digital format associated with the use/sale/distribution/manufacture of controlled substances to include any or all electronic/digital devices that such records can be stored in.
>
> 7. Any and/or all papers tending to show occupancy at and/or control over the premises searched, including but not limited to utility bills, correspondence, and lease agreements.

(Fact No. 2.) The Court finds that defendant Cutchlow's argument that officers seized items they were not authorized to seize under the search warrants must fail.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Cutchlow's Motion to Suppress Evidence and Statement (Doc. #21).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Lajuana M. Counts*
Lajuana M. Counts
United States Magistrate Judge